Allison R. Schmidt, Esq.
Nevada Bar No. 10743
ALLISON R. SCHMIDT ESQ. LLC
8465 W. SAHARA AVE.
Suite 111-504
Las Vegas, Nevada 89117
Phone: (702) 387-7222
Fax: (702) 387-7222
Email: Allison@nevadaslawyers.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RON SANDRIANA<br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC;<br>EXPERIAN INFORMATION SOLUTIONS, INC,<br>Defendants | Case No.<br><br>**COMPLAINT** |

1

INTRODUCTION

1. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011). Specifically, This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

2. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

3. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

4. Ron Sandriana ("Plaintiff"), by Plaintiff's attorneys, brings this action to redress

1 the acts and omissions of Ocwen Loan Servicing, LLC ("Ocwen") and Experian
2 Information Solutions, Inc. ("Experian")(or jointly as "Defendants") with regard
3 to erroneously reporting derogatory credit information to national reporting
4 agencies.

5. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

**VENUE**

6. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

**PARTIES**

7. Plaintiff is a natural person residing in Clark County, Nevada.
8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c). Plaintiff files for Ch. 13 Bankruptcy in the District of Nevada on
9. Defendant Ocwen is a limited liability company organized under the laws of the State of Delaware and doing business in the State of Nevada.
10. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Nevada, with a principal place of business in Ohio.
11. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### GENERAL ALLEGATIONS

12. On or about 3/1/2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 10-13273-btb (the "Chapter 13" or "Bankruptcy").

13. The obligation ("Debt") to Ocwen was scheduled in the Bankruptcy, and Ocwen or its predecessor in interest, received notice of the Bankruptcy.

14. On 7/28/2014, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

15. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

16. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

17. Ocwen did not file any proceedings to declare its alleged debt "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq*.

18. Ocwen did not obtain relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq*. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

19. Accordingly, the debt to Ocwen was discharged through the Bankruptcy on 7/17/2015.

20. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for Ocwen to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

21. However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

22. Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on each respective Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

23. The adverse information reported by Defendants was based on each respective Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan. Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

24. Additionally, Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

25. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

26. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit

reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

27. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

28. On information and belief, Ocwen adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

29. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

30. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

    a. Current Balance

        i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id*.

        ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

        iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

   **b.** <u>Scheduled Monthly Payment Amount</u>:

     i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id*. at 6-21.

     ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

     iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

31. Despite Metro 2 Format's instructions, Ocwen failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

32. In turn, Experian rereported the inaccurate information, thus violating its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

33. To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

34. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

. . .

. . .

. . .

. . .

. . .

**THE EXPERIAN VIOLATIONS**

**Ocwen Misreported Credit Information**

**RE: Account No. Ending in 9534**

35. In an Experian credit report dated October 6, 2015, Ocwen reported balances from March 2014 through March 2015.

36. This was inaccurate because plaintiff performed on all obligations owed to Ocwen under the terms of the Chapter 13 Plan, Ocwen (or its predecessor in interest) was paid by the Chapter 13 Trustee in accordance with the terms of the Chapter 13 Plan, and Plaintiff obtained a discharge of the debt to Ocwen. It was inaccurate to indicate a balance owed following the date of the bankruptcy petition.

37. Additionally, Ocwen reported a "scheduled payment amount" and "actual payment amount" from March 2014 through March 2015 which was inconsistent with the terms of the confirmed Chapter 13 plans, and misleading as to the plaintiff's payment obligations to Ocwen.

38. On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Ocwen's reported information regarding its reported obligation by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by Ocwen.

39. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

40. Plaintiff also requested that Experian provide a copy of the corrected credit report.

41. Upon information and belief, upon receiving the Experian Dispute Letter, Experian timely notified Ocwen of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

42. Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

43. On or about January 8, 2016, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 0274-9306-87) that Ocwen and Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6), and verified the account as "Updated".

44. A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

45. Ocwen and Experian failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

46. Ocwen and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

47. Ocwen and Experian re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Ocwen and Experian still:

   a. Reported a balance owed from March 2014 through March 2015; and
   b. Reported "scheduled payment amounts" and "actual payment amounts" that were inconsistent with the confirmed Chapter 13 Plan.

48. Ocwen and Experian, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

49. Due to Ocwen's and Experian's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

50. Plaintiff's Experian Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Experian failed to make the requested corrections identified in the Plaintiff's Experian Dispute Letter that Experian include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Experian failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

51. Upon information and belief, Experian also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Experian's statutory obligations under 15 U.S.C. §1681i(c).

52. Plaintiff's continued efforts to correct Ocwen's and Experian's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with Ocwen and Experian were fruitless.

53. Ocwen's and Experian's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

54. Also as a result of Ocwen's and Experian's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, fear of credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

55. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, Ocwen and Experian failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

**Experian Failed to Investigate or Notify Furnisher of Dispute**

**RE: Nationstar Account No. Ending in 61091**

56. In an Experian credit report dated October 6, 2015, Nationstar reported that the Plaintiff was 30 days past due in April 2015.

57. This was inaccurate because plaintiff performed all obligations owed to Nationstar (or its predecessor in interest) under the confirmed Chapter 13 plan, Nationstar was paid according to the plan by the Chapter 13 Trustee, and Plaintiff obtained a discharge.

58. On or about December 15, 2015, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Nationstar's reported information regarding its reported obligation by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by Nationstar.

59. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting, among other things, the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

60. Plaintiff also requested a corrected copy of the credit report.

61. On or about January 8, 2016, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 0274-9306-87); however, the reinvestigation report failed to address the dispute regarding the Nationstar account.

62. Upon information and belief, Experian failed to notify Nationstar of the dispute in accordance with its obligations, causing Nationstar to continue reporting inaccurate derogatory information.

63. In fact, the information reported by Nationstar following the dispute contained more inaccurate information than the original credit report obtained on October 6, 2015.

64. Experian required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.
65. Experian failed to conduct a reasonable investigation and wrongly verified inaccurate information in connection with Plaintiff's credit reports.
66. A reasonable investigation by Experian would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.
67. Experian failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), respectively, and wrongly verified inaccurate information in connection with Plaintiff's credit reports.
68. Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.
69. Experian re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Nationstar and Experian:

   a. Still reported that the Plaintiff was 30 days past due in April 2014;
   b. Now reported that Plaintiff's account was 180 days past fue in May 2015, June 2015, and July 2015;
   c. Now reported that Plaintiff was $141,674 past due as of November 2015;
   d. Now reported that the Plaintiff owed a balance of $328,000; and
   e. Indicated that foreclosure proceedings had been started.

70. Experian, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.
71. Due to Experian's failure to reasonably investigate Plaintiff's dispute, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. §

    1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively; and exacerbated the problems with the credit report by adding additional misinformation.

72. Experian's Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Experian failed to make the requested corrections identified in the Plaintiff's Experian Dispute Letter that Experian include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Experian failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

73. Upon information and belief, Experian also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Experian's statutory obligations under 15 U.S.C. §1681i(c).

74. Plaintiff's continued efforts to correct Nationstar's and Experian's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with Experian were fruitless.

75. Experian's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

76. Due to Experian's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, fear of credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to his creditworthiness, and emotional distress.

77. By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, failing to notify the furnisher of the dispute, and failing to conduct a reasonable reinvestigation, Experian failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E), 1681i(a) and/or 1681e(b), respectively.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

78. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

79. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

80. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

81. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);
- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and
- any other relief the Court may deem just and proper.

### TRIAL BY JURY

82. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 23, 2017

Respectfully submitted,

By /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*Ron Sandriana*